BENTON et al., Appellants, v. SCOTT, Collector.

**In Banc, May 2, 1902.**

1. **Public Schools:** TAXATION: FIXING RATE FOR SCHOOL PURPOSES. The whole power of fixing length of the school term, at the annual school meeting, and of determining the rate of taxation for school purposes above forty cents on the $100 valuation, is vested in the qualified voters. The law does not require the school board to first determine the rate, and then submit it to the voters for adoption. The statutory provision to that effect refers to a special, and not to an annual meeting.

2. ———: ———: FIXING RATE FOR BONDS. The law does not require the voters to determine the rate of taxation to be levied for the payment of interest on bonds issued for building a schoolhouse, or the rate for the creation of a sinking fund to be used in paying these bonds as they become due. The statute and the Constitution mean that the voters may authorize the issuance of bonds (or the incurring of a debt) for building a schoolhouse, and if by the necessary two-thirds vote they give this authority, then it is the duty of the board to fix the rate of taxation both for interest and sinking fund, and "to provide an annual tax sufficient to pay the interest and sinking fund." (BURGESS, C. J., dissenting.)

3. ———: ———: ———: DEBTS EXISTING AT ADOPTION OF CONSTITUTION. The words "existing indebtedness" used in the Constitution and in sections 9757 and 9758, Revised Statutes 1899, authorizing school boards to make a levy annually to pay the interest on, and to create a sinking fund for redeeming bonds issued for building purposes, does not refer only to debts existing at the time of the adoption of the Constitution, but to debts regularly created under the provisions of the chapter headed "Schools," which have accrued since the adoption of the Constitution of 1875.

Appeal from Clay Circuit Court.—*Hon. E. J. Broaddus,* Judge.

AFFIRMED.

Benton v. Scott.

*H. M. Meriwether* and *C. E. Denham* for appellants.

(1) Appellants contend that in order to increase the rate of taxation for school purposes above forty cents on the $100 valuation, the board must first determine the rate necessary and submit the proposition to the voters of the district, and said proposed rate must be adopted by a majority of the voters voting upon said proposition. Both the board and the voters have failed to comply with these requirements and hence the increase is void. Sec. 11, art. 10, Constitution; sec. 9777, R. S. 1899; State v. Railroad, 75 Mo. 528; State ex rel. v. Railroad, 135 Mo. 633; Railroad v. Chapin, 62 S. W. 1001. (2) Interest and sinking-fund tax must be voted by the taxpayers of the school district when the indebtedness on which it is to be applied originated since the adoption of the Constitution of 1875. Sec. 11, art. 10, Constitution; sec. 12, art. 10, Constitution; sec. 9752, R. S. 1899; sec. 9753, R. S. 1899; sec. 9778, R. S. 1899; Lamar Water & Electric Light Co. v. City of Lamar, 128 Mo. 215. (3) Interest and sinking-fund tax need not be voted by the taxpayers of the school district when the indebtedness on which it is to be applied originated before the adoption of the Constitution of 1875. Sec. 11, art. 10, Constitution: Laws 1877, pp. 37-8-9, sec. 1; now sec. 9754, R. S. 1899; Laws 1877, pp. 37-8-9, sec. 2; now sec. 9755, R. S. 1899; Laws 1877, pp. 37-8-9, sec. 3; now sec. 9756, R. S. 1899; Laws 1877, pp. 37-8-9, sec. 4; now sec. 9757, R. S. 1899; Laws 1877, pp 37-8-9, sec. 5; now sec. 9758, R. S. 1899; Laws 1877, pp. 37-8-9, sec. 6; Laws 1877, pp. 37-8-9, sec. 7; Railroad v. Chapin, supra.

*Sandusky & Sandusky* and *Simrall & Trimble* for respondent.

(1) Appellants fail to note the difference between the acts of a school district done at a regular annual meeting and

those done at a special meeting. The time and place of the former is fixed by law. Sec. 9749, R. S. 1899. The latter can be held only when called by the board under certain conditions. Sec. 9780, R. S. 1899. (2) The rate, of which appellants complain, was for school purposes, that is, to maintain the school for that year, and was fixed at sixty cents on the $100 at the annual meeting. The qualified voters at the annual meeting have power: (a) To determine, by ballot, the length of school term. (b) To determine the rate to be levied for school purposes. Clause 4, sec. 9750, R. S. 1899; State ex rel. v. Edwards, 151 Mo. 479. (3) There is nothing in said section 9750 which requires the board to first determine the rate and submit that to the annual meeting because: (a) At that meeting the length of school term is fixed. (b) The law requires the voters at that meeting to be furnished with a complete statement of the finances of the district. Sec. 9795, R. S. 1899. (c) The voters having decided upon the length of the term, and having before them an exact statement of the finances of the school, are in possession of all the data necessary to "determine the rate" and need no recommendation from the board. (d) The board can not say prior to the meeting what rate would be necessary, because it can not know beforehand what length of term will be voted. (4) Appellants contend that the increase is wholly void unless the board first determines the rate and submits that to the meeting for its acceptance or rejection. This is not true, because: The power to determine the rate rests wholly with the voters assembled at the annual meeting. The board, at most, could only suggest a rate and the voters could accept it or vote it down, as they chose. If they voted it down, the board would then have to submit another rate, and if that was voted down, then another and another and so on. Hence, even if the board should submit a rate, the result would be precisely the same as though the board, instead of submitting a specific rate, had merely submitted the general question of an increase and left

it to the voters to say what the rate should be. This latter is what the board did in this case. So that even on the theory that the board should have submitted a rate, its omission to do so was a mere irregularity which should in nowise affect the validity of the proceeding. The prime object of the law is to see that the voters authorize the increase. And this was done. (5) Section 9777, Revised Statutes 1899, which requires the board to "determine the rate of taxation" and submit it to the voters, has reference to special meetings and not to annual meetings. The section says, "at an election to be by such board called and held" showing on its face that it is speaking of a special and not an annual meeting. In such case the board should determine the rate, because: (a) The section is providing for a time when it becomes necessary, "in the judgment of the board" to increase the rate of taxation, etc. (b) The length of school term having been fixed by the vote at the annual meeting, and the board knowing what this is and the condition of the finances of the school, and having called the meeting for a special purpose, should submit the rate which is necessary in their judgment. (c) The question before the special meeting is, not to "determine the rate," as at an annual meeting, but whether the rate already determined shall be increased. (6) Section 11 of article 10 of the Constitution does not require the annual rates for school purposes to be ascertained beforehand and submitted to the annual meeting. Down to the sentence beginning "for the purpose of erecting public buildings," etc., this constitutional section is dealing with the annual rates necessary to maintain the schools. In so doing, it says nothing about the rate being determined beforehand, but merely limits it to forty cents on the $100 and then says it may be increased on condition that a majority, etc., vote to do so. The remaining portion of this section deals with the erection of public buildings by means of an increased levy. It has no reference to the erection of such building through the incurring of an indebtedness by

an issue of bonds. (7) The case cited by appellants in support of their contention that section 9777 is the only section authorizing the qualified voters to vote on the rate is correct as the law then stood, but it is not applicable as the law now is. Laws 1883, clause 4, p. 186. (8) Appellants fail to note that there are two ways provided by which a schoolhouse may be erected. One is to levy a tax and build it with the funds collected thereby, pursuant to the authority given in the latter part of section 11, article 10, Constitution, and clause 9 of section 9750, Revised Statutes 1899, and section 9778, Revised Statutes 1899. By this method no indebtedness is incurred and it is conceded that if the district in question at a special meeting had built the schoolhouse merely by levying a tax instead of an issue of bonds, then the rate to be levied would have had to be submitted. The other way is to issue bonds and incur an indebtedness pursuant to the authority given in section 12, article 10, Constitution, and Revised Statutes 1899, sections 9752, 9753, 9757, 9758. The school district in question chose the latter way and there is nothing in the above cited laws requiring the voters to fix the tax for interest and sinking funds. (9) Section 12, article 10, Constitution, is the section bearing on the question of indebtedness. It nowhere requires the voters to fix the rate for interest and sinking fund. All it requires is that before or at the time of incurring the indebtedness the district shall provide for the collection of an annual tax to pay interest and sinking fund. If it intended that the voters should provide for such tax it would have said "the voters, at the time of giving their assent, shall provide for the collection of an annual tax," etc., whereas it says: "The district at the time of incurring such indebtedness, shall," etc. Sec. 9753, R. S. 1899. (10) The bonds in question were voted at an annual meeting upon due notice given. The qualified voters, at an annual meeting, have power to authorize the directors to borrow money and issue

bonds to build a schoolhouse.     Sec. 9752, R. S. 1899.
This section is complete within itself and provides the mode
and means by which school directors are authorized to bor-
row money and issue bonds independent of, and without ref-
erence to, any other section.     Richardson v. McReynolds,
114 Mo. 650.   (11)   Section 9778 has no reference to an
increase of tax to pay bonded indebtedness.   It has reference
to the erection of a schoolhouse from funds derived from
an increased levy, not from an issue of bonds.   It also is
speaking of special meetings, for it says the question shall
be decided "at an election to be by such board called and
held for that purpose;" etc.   State ex rel. v. Edwards, 151
Mo. 478.   (12)   Appellants' contention that the rates for
annual interest and sinking fund should have been fixed by
the voters at the time the bonds were voted can not be cor-
rect, because:   (a)   If that were true, the rate of taxation
to pay said bonds would be fixed and unchangeable for the
entire time the bonds would run.   (b)   If the rate must
also be voted on, suppose after bonds have been voted, the
rate for the payment of the interest and principal should be
voted down.   The voters can not be coerced.   How could
bonds ever be negotiated if the holder were required to take
such chances?   (c)   The authority to issue the bonds and
borrow money thereon carries with it the authority to pro-
vide for their payment, and the statute confers this power
on the board.   R. S. 1899, sec. 9753.

## In Division Two.

GANTT, J.—This is a proceeding by plaintiffs who are
taxpayers in school district No. 3, township 53, range 31, in
Clay county, against the defendant, who is the collector of
revenue of said county, to enjoin the collection of school
taxes levied at the rate of $1.05 in said school district.   Prior
to the finding of the bill plaintiffs tendered the collector forty

cents on the $100 assessed valuation for school purposes, which was refused.

All the evidence material to the issue is documentary and consists of the records of the school board of said district.

Prior to April 5, 1898, said school district was not incumbered with any debt whatever.

The circuit court denied the injunction, and plaintiffs appeal.

At the annual school meeting of school district No. 3, township 53, range 31, of Clay county, on the first Tuesday in April, 1898, to-wit, April 5, 1898, the qualified voters and taxpayers voted to tax themselves at the rate of sixty cents on the $100 assessed valuation for the purpose of raising funds to maintain the school. At the same meeting by a two-thirds majority vote they authorized an issue of $7,500 of bonds to build a new schoolhouse. The bonds were issued and sold and with the proceeds the schoolhouse was erected and is used by the district. The school district is organized pursuant to the provisions of section 9739, Revised Statutes 1899, and is governed by three directors and comprises the city of Kearney and adjacent territory. The assessed valuation of taxable property in said district made by the assessment next prior to April 5, 1898, is $242,570, and the limit of the indebtedness which said district can incur under the laws of this State is five per cent of that amount, or $12,128.50.

On March 15, 1898, the board of directors of said district ordered that two propositions be submitted to the annual school meeting of said district, viz.:

"1. To increase the estimate for school purposes in excess of forty cents on the one hundred dollars valuation in said district.

"2. To authorize the board of directors of school district No. 3, township 53, range 31, county of Clay and State

of Missouri, to issue fifteen bonds of the denomination of five hundred dollars each, to fall due and be payable on or before fifteen years after date, bearing interest at a rate not to exceed eight per cent per annum, evidenced by fifteen coupons payable annually at the office of the county treasurer upon the presentation and cancellation of said coupons as they severally become due, the proceeds derived from the sale of said bonds to be used for the purpose of erecting and furnishing a new school building upon the present site in said district."

The foregoing propositions were incorporated in the notices put up by the clerk, which were posted by him in at least five different places in said district, more than fifteen days prior to April 5, 1898, and a copy of the same was also published in the Kearney Clipper, a weekly newspaper published in said district, for the same length of time. The annual meeting was duly held on Tuesday, April 5, 1898, beginning at two o'clock p. m. After said meeting had organized by the election of a chairman and secretary, the clerk of said district, who is a member of the board, read a report, to the meeting, which showed, among other things, the following:

Valuation of district property, $242,570; rate of levy for school purposes, sixty cents on the $100 assessed valuation; estimated receipts, $1,941.02; estimated expenses, $1,970, showing that at the rate of sixty cents on the $100 valuation, receipts and expenditures would be nearly equal, and that sixty cents would be a proper rate for school purposes.

Thereupon the chairman appointed T. S. Brown and W. W. Major as tellers to distribute and collect the ballots for one director for the next ensuing three years. When the ballots were read by the tellers and counted by the secretary and one assistant, it was found that Oreth L. Eberts had re-

Vol 168 mo—25.

ceived 98 votes for director and R. W. Groomer 58 votes, whereupon it was declared by the chairman that Oreth L. Eberts was duly elected director of said district for the next ensuing three years.

And thereupon the chair announced that the next business was to determine the length of the school term for the ensuing year and directed the same tellers to distribute the ballots. After the ballots had been distributed the election proceeded and the ballots were counted and it appeared and was so announced by the chairman, that the vote stood as follows: For six months' school, 3 votes; for seven months' school, 8 votes; for eight months' school, 103 votes; for nine months' school, 1 vote; for thirteen months' school, 1 vote. Whereupon the chairman declared that a majority of the votes was for an eight months' school.

The next business in order was the proposition number one, of which notice had been given as aforesaid, to-wit, "a proposition to increase the estimate for school purposes in excess of forty cents on the $100 valuation." The ballots were distributed, cast and counted, from which it appeared the vote was as follows: for forty cents levy, 12 votes; for forty-five cents' levy, 1 vote; for fifty cents' levy, 16 votes; for fifty-five cents' levy, 1 vote; for sixty cents' levy, 104 votes; for sixty-five cents' levy, 2 votes. Whereupon it was declared by the chairman that the vote of the meeting was for sixty cents' levy on the $100 assessed valuation for school purposes.

The next business taken up was the proposition to authorize the board of directors of said school district to incur an indebtedness of $7,500 and issue in payment therefor fifteen bonds of the denomination of $500 each, to fall due on or before fifteen years after date, bearing interest not to exceed eight per cent per annum, evidenced by fifteen coupons payable annually at the office of the county treasurer upon the presentation and cancellation of said coupons as

they severally became due, the proceeds to be used for the purpose of erecting and furnishing a new schoolhouse on the present site 'in said district. The ballots were distributed, and the chairman directed the qualified voters to prepare their ballots, "for the loan" or "against the loan" as they might desire to vote, on said proposition to incur said debt, and further directed said voters to file by the chairman's desk and deposit with the chairman their ballots, the chairman to write the number of each ballot thereon, and then place same in a ballot box prepared for such ballots and the secretary was directed to register the name of each voter and the number of his ballot. All of which was done, and after all the ballots had been cast, the tellers in the presence of the meeting opened the ballot box and read off the ballots which were counted by the clerk and it was ascertained that 133 ballots had upon them the words, "For the loan," and 41 ballots had upon them the words, "Against the loan," and eight ballots so irregularly indorsed that they were declared illegal. The whole number of voters at said election were 182, and of these 133 voted for the loan, and the highest number of votes cast on any proposition at said school election was 182. Thereupon the chairman announced and declared that more than two-thirds of the greatest number of votes cast at said election was for the loan, and he declared said proposition to incur said indebtedness was carried.

The chairman and secretary thereupon prepared a record of said proceedings at said meeting, and laid it before the board of directors of said school district, who proceeded to canvass the returns shown therein, and said board found that both of said propositions had carried, and ordered that the minutes of the school meeting be recorded upon the records of said school district, which was done. Afterwards at a duly adjourned meeting of said school board on May 10, 1898, the whole board being present, the said board, pursuant to the authority conferred by the annual meeting,

issued the fifteen bonds of the denomination of $500 each, and accepted a proposition from John S. Major to take the entire issue at their par value at six per cent interest.

At the same meeting of the board, being the time at which said indebtedness was incurred, a resolution was introduced and adopted by the board which is as follows:

"That a tax of twenty-seven cents on the one hundred dollars of the assessed valuation of the property in this school district, be levied for the purpose of creating a sinking fund for the payment of the bonds issued; and eighteen cents on the one hundred dollars valuation be levied for the purpose of creating a fund for the payment of the interest and printing and cost of issuing said bonds, and that forty cents on the one hundred dollars valuation be levied for the purpose of creating a teachers' fund, and twenty cents on the one hundred dollars valuation be levied for the purpose of creating a fund for incidental purposes."

Said bonds were issued and signed, sent to the State Auditor, and by him duly registered and returned to the treasurer of Clay county, who delivered them to John S. Major, upon the payment to said treasurer for the benefit of said school district, of the full amount of their face or par value.

The rates levied by the board as contained in the resolution above set forth, were duly certified to the clerk of the county court of Clay county, Missouri, pursuant to section 8000, Revised Statutes 1889 (then in force, now sec. 9771, R. S. 1899), and said clerk made the taxbooks of said county, charging all property in said district with school taxes at the rates called for by the estimate and certificate filed with him, and delivered said taxbooks to Charles H. Scott, collector of the revenue of Clay county, who is defendant herein.

Upon the foregoing statement the plaintiffs advance two

propositions for a reversal of the judgment of the circuit court denying the injunction.

First, that in order to increase the rate of taxation for school purposes above forty cents on the $100 valuation, the board must first determine the rate necessary, and submit the proposition to the voters of the district, and said proposed rate must be adopted by a majority of the voters voting upon said proposition, and that in this case both the board and the voters have failed to comply with these requirements, and, hence, the increase is void.

Second, that since the adoption of the Constitution of 1875, the interest and sinking-fund tax must be voted by the taxpayers of the school district at the same time when the indebtedness on which it is to be applied originated.

I.    Proceeding to a consideration of these in the order mentioned, it will be observed that the contention that the qualified voters can not determine the rate for school purposes, but can only reject or adopt the rate first determined by the board, is predicated upon section 9777, Revised Statutes 1899.    We can not give our assent to this view.

Counsel evidently do not discriminate · between those things which the qualified voters of a school district may do at an *annual* meeting and those which may be done at a special or called meeting.    The time and place of the *annual meeting* ·is fixed by law.    [Sec. 9749, R. S. 1899.]    At such *annual meeting* the qualified voters have the power by a majority of the votes cast, among other things: "Fourth. To determine, by ballot, the length of school term in excess of six months that the public schools of the district shall be maintained for the next scholastic year; also to determine the rate, if any, in excess of forty cents on the one hundred dollars valuation to be levied for school purposes as provided for in section 9777."    [Sec. 9750, R. S. 1899.]

There is nothing in section 9750 which requires the board of directors to first determine the rate and submit it

to the *annual meeting*, because at that meeting the qualified voters determine the length of the term and the law requires that they shall be furnished with a statement of the finances of the district as was done in this case.

With this information before them the voters can intelligently fix the length of the term and the rate of taxation necessary to support the school without any estimate of the board. Moreover, as the board can not know in advance what length of term the voters will fix upon, any estimate it would make would be pure conjecture. It can not be that the increase is void unless the board first determines the rate, as the whole power of fixing the length of term and determining the rate is vested in the qualified voters. If the board suggests a rate it is clear the voters could reject it.

We are of opinion that it was amply sufficient to submit the question of an increase of rate and leave it to the voters. to determine what it should be. The purpose of the law was that the voters should authorize the increase over forty cents, and this they did and specified sixty cents as the rate.

Section 9777, Revised Statutes 1899 on its face discloses that it is a provision for a special, not an annual meeting. That section looks to a condition when the board in its judgment deems it necessary to increase the rate, and the meeting is only authorized to pass upon those things for which it is called. Such a meeting is not to *determine the rate but to increase* that already determined at the annual meeting.

Counsel cite State v. Railroad, 75 Mo. 526, in support of their position that section 9777 is the *only* section authorizing the qualified voters to vote on the rate. That decision correctly announced the law as it then existed, and as it remained until 1883 (R. S. 1879, sec. 7031), when a new section was adopted (Laws 1883, clause 4, p. 186), which empowered the annual meeting to determine the length of term, and to order the proper estimate, etc.

This court in State ex rel. v. Railroad, 135 Mo. 633, did

not consider nor determine the point that section 8005 (now 9777) is designed and intended to provide for special meetings called by the board, and not for annual meetings. Railroad v. Chapin, 162 Mo. 409, only decides that an increase of the annual levy without any vote authorizing the increase is void.

The statutes now in force provide for three distinct methods for having an election to vote on the increase of the tax rate:

First, when the voters in annual meeting see fit to so order.

Second, when a special meeting is called by the board of its own motion.

Third, when the board calls a special meeting for that purpose at the request of ten taxpayers.

For the first, no notice is necessary to empower the voters to hold an election to increase the rate; for the other two, it is necessary. [State ex rel. v. Edwards, 151 Mo. 472.]

Section 11 of article 10 of the Constitution throws no light whatever upon the question under discussion.

Some effort is made to show that the voters voted an increase of sixty cents over and above forty cents, making a total of one hundred cents on the assessed valuation, but the record conclusively establishes that the voters fixed the rate for all school purposes at sixty cents, and the board levied that rate.

The first proposition of plaintiffs, in our opinion, is untenable and the court committed no error in ruling adversely to their contention.

II. The other ground upon which plaintiffs seek to enjoin the tax is, that the voters did not by their vote determine a *rate* to be levied for the interest and sinking fund, at the time they authorized the incurring of the indebtedness to build the schoolhouse.

Under sections 11 and 12 of article 10 of the Constitu-

tion of 1875, and the statutes passed in pursuance thereof, there are two ways provided by which a schoolhouse may be built.   One is to levy a tax and build it with the funds thus provided, and the other is to authorize an issue of bonds by a two-thirds vote of the qualified voters of the school district, voting at an election for that purpose.

It is obvious that this school district adopted the latter course.   The first way is authorized by section 11, article 10, of the Constitution, wherein it is provided:   "For the purpose of erecting public buildings in counties, cities or school districts, the rates of taxation herein limited may be increased when the rate of such increase and the purpose for which it is intended shall have been submitted to a vote of the people, and two-thirds of the qualified voters of such county, city, or school district, voting at such election, shall vote therefor. The rate herein allowed to each county shall be ascertained by the amount of taxable property therein, according to the last assessment for State and county purposes, and the rate allowed to each city or town by the number of inhabitants, according ot the last census taken under the authority of the State, or of the United States; said restrictions as to rates shall apply to taxes of every kind and description, whether general or special, except taxes to pay valid indebtedness now existing, or bonds which may be issued in renewal of such indebtedness."

Section 9750, clause 9, confers upon the qualified voters at the annual meeting the power "to determine by ballot, the rate to be levied upon the one hundred dollars assessed valuation necessary to purchase a site, erect a schoolhouse thereon and furnish the same as provided for in section 9778."

Section 9778 provides the *modus operandi* when a special meeting is to be called and an election held, for voting the tax when a schoolhouse is to be built by the levy of a tax without issuing bonds.

On the other hand, the authority for issuing bonds to . erect a schoolhouse is founded upon section 12 of article 10 of the Constitution.

Sections 9752, 9753, 9757 and 9758 clearly refer to the plan of incurring an indebtedness to build a schoolhouse and issuing bonds to pay for the same. From their very nature they can have no reference to any other method.

By section 9752 the board is authorized to borrow money and issue bonds. The question of incurring the debt may be decided at an annual or special election. Provision is made for the notice, the form of ballot, the necessary two-thirds majority, and when the debt is authorized then section 9753 fixes the limit of such indebtedness, and that the rate of interest shall be agreed upon by the parties, not to exceed the legal rate, and then, when the loan is effected, "it shall be the duty of the directors to provide for the collection of an annual tax sufficient to pay the interest on said indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within the time said principal shall become due."

The loan is not effected when the vote authorizing it is taken, but when the board has negotiated the bonds, and when that is done it is made the duty of the directors to provide for the annual interest and the sinking fund. Sections 9757 and 9758 reinforce section 9753 by providing that the boards may levy the interest and sinking-fund tax.

This provision is in strict compliance with section 12 of article 10 of the Constitution which provides, "that any county, city, town, township, school district, or other political corporation or subdivision of the State, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking

fund for the payment of the principal thereof, within twenty years from the time of contracting the same."

By force of this constitutional authority to incur indebtedness, follows the inevitable concomitant, the levy of a tax to pay the interest annually and a sinking fund to pay the principal. So imperative is the command that without farther legislation the school district incurring a debt by issuing bonds could provide for the interest and sinking fund without further legislative authority. This provision of the Constitution may well be deemed self-enforcing, but in this case it is unnecessary to so hold, as the Legislature in sections 9757 and 9758 specifically authorize the boards to levy such taxes.

These statutory provisions are written into the obligations of counties, cities and school boards when they effect an indebtedness under the Constitution, as much as if they were written into each bond issued by them.

As it is our duty to declare the law, it is sufficient to know what the Legislature has enacted unless it can be shown to be in violation of the Constitution, but if it should be deemed necessary to justify the wisdom of the Legislature in requiring the respective boards "to provide an annual tax sufficient to pay the interest and sinking fund," the reason can be found in the consideration that if the voters were required to fix a rate at the time they vote to incur the indebtedness, that rate must remain unchanged for the entire time the bonds are to run, in this case fifteen years, and yet in that time many of the bonds may be retired out of the sinking fund, especially so when, as in this case, they are made payable on or before their maturity, and during the time they are to run the interest rate may greatly decrease, as it has steadily done since the adoption of the Constitution, and when a part of the bonds are paid the rate for the sinking fund would necessarily be less.

The framers of the Constitution evidently intended to

strengthen the credit of the counties and municipalities and thereby enable them to dispose of their bonds at their full value, and so provided that when they incurred debts, the purchasers should know exactly what obligations were incurred.

It certainly was never intended that they should vote to incur the debt and then at the same meeting refuse to provide for its payment and yet if it must be left to a vote this might follow, and in such circumstances no one would be so unwise as to purchase the bonds.

We think the true interpretation of section 12 of article 10 of the Constitution and the statutes already cited are that the authority conferred upon the board to issue the bonds, by the two-thirds vote of the taxpayers, carried with it the power in the school boards to provide the annual tax for the interest and sinking fund, and that it was a wise precaution to leave the rate for this purpose to be fixed annually by the board according to the needs of the district which should and necessarily must decrease as the bonds are one by one paid off.

Counsel for plaintiffs argue that sections 9757 and 9758, Revised Statutes 1899, have reference only ·to bonds issued prior to the Constitution of 1875, and as this district owed no outstanding bonds on April 5, 1898, it required no levy of an annual tax to pay interest and to create a sinking fund, which the learned counsel concede could be done in cases in which the indebtedness originated before the adoption of the Constitution of 1875, or when such outstanding bonds are renewals of such prior indebtedness.

To sustain the propositions that sections 9757 and 9758 refer only to indebtedness created before the Constitution of 1875, counsel trace the history of those sections from the refunding act of April 14, 1877 (Laws 1877, pp. 37-39), and reach the conclusion that because at that time it was the purpose to provide for the then outstanding indebtedness by

allowing it to be refunded, and providing that the boards of education could make the estimate for the annual tax and sinking fund, therefore no power was conferred to make like provision for the payment of any subsequently-incurred debt. But the fact that when the refunding act passed it did refer to these outstanding bonds does not tend to prevent the application of the law, as it now exists, to any and all outstanding bonds that have been issued in pursuance of the revised chapter on "Schools" passed by the General Assembly, May 28, 1889.

In this last act, these two sections expressly refer to "any outstanding bonds" and to "any bonds that may be issued by virtue of this chapter."

Certainly the Legislature in its plenary power to legislate was at liberty to extend the same system over all bonds created by school districts and change the word "act" to "chapter," and instead of providing merely for bonds which were outstanding when the Constitution was adopted, extend it to any and all bonds issued under said chapter, and clearly did so, unless the making of these sections apply to indebtedness which has accrued since the adoption of the Constitution renders them to that extent unconstitutional, because in conflict with sections 11 and 12, article 10 of the Constitution, which plaintiffs contend.

Counsel for plaintiffs refer us to a decision of Division One of this court in Railroad v. Chapin, 162 Mo. 409, but the court there said, just as we have already said, that, "Sections 9757 and 9758, which authorize the boards of education to make estimates for the levy of these taxes, *do not require* that such taxes *should be sanctioned* by a vote of the taxpayers. The provisions in these sections that such taxes are 'to be levied and collected in the same manner as other taxes for school purposes' is not to be construed as a *limitation* upon the power, but simply as prescribing a mode by which the power is to be exercised. *Nor does such a construc-*

*tion render these sections obnoxious to the provisions of article
10, section 11, of the Constitution,* which is there dealing with
'annual rates for school purposes,' and not with an existing
indebtedness, nor with a tax to be levied to raise funds for
the payment of such indebtedness or the interest thereon."

The learned justice who wrote that opinion evidently
did not mean thereby to say that an indebtedness created
by the issue and sale of school bonds by a board of educa-
tion pursuant to a two-thirds vote of the taxpayers at an
annual meeting or a special meeting duly called and with no-
tice of the proposed incurring of such a debt *since the adop-
tion* of the Constitution of 1875 *would not be,* as plaintiffs
seem to maintain, an "existing indebtedness" at the time
such estimates were made in that case.

Obviously no such distinction suggested itself to the
writer of that opinion.   The point he was enforcing was that
section 11 of article 10 of the Constitution deals with annual
rates for school purposes, and not with the tax necessary to
pay either an indebtedness which existed when the Constitu-
tion was adopted and which that section expressly excepted
from said rates, or, an indebtedness created under section 12
of article 10 of the same instrument, which, within prescribed
limits, the school district might incur, and to both of which
cases, sections 9757 and 9758 equally apply in their provis-
ions for the levy of an annual tax and a sinking fund, and
section 11 of article 10 of the Constitution in no way affects
the validity of those sections, and no vote is required to enable
the board of education to provide for the liquidation of the
interest and for a sinking fund to pay the debt which the
taxpayers have authorized and which follow as a necessary
corollary and incident of that debt without further vote or
authorization.   The premises considered, no error was com-
mitted in denying the injunction and the judgment of the
circuit court is affirmed.

*Sherwood, P. J.,* concurs; *Burgess, J.,* in paragraph one,
but dissents as to paragraph two.

The foregoing opinion of GANTT, J., in Division Two, after re-argument in the Court in Banc, is hereby adopted as the opinion of the Court in Banc in the above entitled case. *Sherwood, Robinson, Brace* and *Marshall, JJ.*, concur; *Burgess, C. J.*, dissenting as to paragraph two thereof; *Valliant, J.*, absent.