## THE STATE ex rel. NEW MADRID COUNTY et al. v. JOHN P. GORDON, State Auditor.

**In Banc, July 2, 1914.**

1. COURTHOUSE: Election for Bonds: No Recital of No Building Fund. The Act of 1913 (Laws 1913, p. 121) does not make it compulsory upon county courts to create the building fund authorized by section two thereof, and it is not a prerequisite to a valid election for the issuance of courthouse bonds, that the petition presented to the county court asking for such an election, or that the order of the court ordering the election, contain a recital that the courthouse cannot be built out of the building fund authorized by said section two. Such recital is not jurisdictional.

2. ———: ———: Sufficient Building Fund: Equity. Where there is a sufficient building fund on hand, created in pursuance to section two of the Act of 1913, Laws 1913, p. 121, to erect a courthouse or other public building, without resort to an election to authorize the issuance of bonds, the county court, at the instance of taxpayers, may be enjoined from ordering such an election, because in equity such an election should not be held.

3. ———: ———: Sufficient Petition: In Terms of Statute. As a rule, when the statute fixes the terms of a pleading, a substantial compliance with them is sufficient; and as the statute prescribes the terms of the petition to be presented to the county court asking that an election be held to authorize the issuance of bonds for the building of a courthouse, and does
260 Mo.—10

not say that it shall contain a recital that there is not sufficient money pertaining to the building fund to build it, an omission of such a recital does not show a lack of jurisdiction in the court to order the election.

4. ————: ————: Notice: Rate of Increased Taxation. Section 9 of the Act of 1913, Laws 1913, p. 121, is intended to apply to both elections authorized by statute for raising money to build a courthouse, namely, the election to authorize the issuance and sale of bonds, and the election to authorize an increase in the rate of taxation to create a special fund without bonds; and some of its requirements are applicable to the one, and others to the other. That section does not mean that the notice to authorize the issuance of bonds shall specify "the rate of the increase of the tax levy." The Legislature itself so construed that section by prescribing the form of the ballot for a bond election, which contains no words about an increase of the tax rate, and by the further provision that, if the bonds are authorized, the court shall levy an annual tax sufficient to pay the interest and to create a sinking fund sufficient to extinguish the entire debt within twenty years. [Following Benton v. Scott, 168 Mo. 378.]

### Mandamus.

WRIT ALLOWED.

*Gallivan, Riley & Riley* for relators.

(1) It was not necessary that the notice of the election should "specify the rate of the increase of the tax levy." (2) It is not required that the record and order of the county court show that the county court of New Madrid county found it was necessary for the county of New Madrid to incur an indebtedness for the purpose of building a courthouse. Gaston v. Lamkin, 115 Mo. 31.

*John T. Barker,* Attorney-General, *A. T. Dumm* and *Fauntleroy, Cullen & Hay* for respondent.

(1) The record does not show jurisdictional facts. This provision of section 8, as clearly as the English language can express it, requires that bond-issue elec-

tions be limited to those cases in which the expenditure designed, or intended, cannot be made by creating a county building fund, as provided in the first seven sections of the Act of 1913. Neither the petition filed with the county court, nor the order of the court based upon such petition, recites that such fact exists. Such a showing is jurisdictional. (2) The notice of election fails to comply with one of the express provisions of section 9, that relative to the rate of increase of the tax levy. Railroad v. Apperson, 97 Mo. 309; Railroad v. Beares, 39 Ind. 598; Bank v. City of Pomma, 48 Kan. 55; Railroad v. Wells, 39 Ind. 539. The requirement for the levy of an annual tax in the case of a bond issue is just as clear and explicit as in the case of an election to increase an indebtedness by the direct levy of a tax.

GRAVES, J.—Original action in mandamus. Issuance of alternative writ waived and the petition taken as and for such writ. To this petition the respondent demurred, thus leaving to us a case of admitted facts, to which should be applied applicable law.

At a special election the county of New Madrid voted $40,000 for the building of a new courthouse and authorized the issuance of bonds in such sum. The bonds were presented to the respondent as State Auditor for registration, and he refused to register the same, and hence this action. His reasons for declining to register the bonds are presumably those stated in the demurrer filed in this cause. Such demurrer reads:

"Comes now the respondent herein, and treating the petition for the writ as and for the alternative writ in this cause, presents herein his demurrer to said petition and alternative writ, and as grounds therefor respondent assigns the following:

"1.   The petition and alternative writ and the record of the county court of New Madrid county, made a part of the petition, upon their face show that the relator is not entitled to the relief prayed for, or any relief.

"2.   That the petition and the record of the county court of New Madrid County, made a part of the petition, fails to show that the county court of New Madrid county found that the expenditure for the building of the county courthouse could not be made by creating a county building fund, as provided by the first seven sections of the act of the General Assembly of Missouri approved March 22, 1913.

"3.   That the petition and the record and order of the court made a part thereof do not show that the county court of New Madrid county found that it was necessary for the county of New Madrid to incur an indebtedness for the purpose of building a courthouse.

"4.   That, as shown by the petition for the writ, and the orders and record of the county court of New Madrid county made a part thereof, the notice of the election ordered by the court failed to specify the rate of the increase of the tax levy, as provided and required by section 9 of the Act of March 22, 1913.

"5.   That the petition for the alternative writ filed herein by the relator being treated as and before the alternative writ herein, together with all exhibits attached to said petition and referred to therein and treated as parts of said petition, show that the courthouse bonds sought to be registered are not entitled to registration, and for that reason the relator is not entitled to the relief prayed for, or any other relief.

"Wherefore, respondent prays judgment of this court upon his demurrer, and that he may go hence without day."

Matters of admitted facts will be noted in connection with a discussion of the several points raised by

respondent's demurrer. This sufficiently outlines the case.

I. It is first contended that there is absent a jurisdictional fact in the record made by the county court in ordering the election for these bonds, and that for such reason the bonds are void and should not be registered. In 1913 the Legislature repealed and re-enacted article 5, chapter 15, Revised Statutes 1909. This article contained ten sections. The new article enacted in 1913 in lieu thereof contains seventeen sections, including the repealing section, which is section one. The original article provides two methods for building a courthouse, i. e., (1) by issuing and selling bonds for the desired amount, and (2) by levying a direct property tax for a given number of years to pay off and discharge the amount fixed for the public building. Both of these methods contemplated and required a vote of the people.

*Bond Election: Recital of No Building Fund.*

The Act of 1913, or the new article 5 of chapter 15, provides three methods for building a courthouse. Section 2 of such new law, so far as necessary, reads:

"That at the first regular term of the county court in all counties in this State after this law shall be in force and effect, the county court may create a county building fund to provide for the future erection, enlargement, repair or maintenance of county buildings and annually after said fund is established at the first term of the court held after the end of the fiscal year, the county court shall transfer to the county building fund any surplus left over in any county fund, except road and bridge funds, not needed for the payment of outstanding or back warrants drawn against the fund to be transferred and shall from time to time annually thereafter, at the end of the fiscal year, transfer to the county building fund the surplus of any county bond, sinking or interest fund, not needed for

the payment of outstanding bonds or interest and may add to such fund as hereinafter provided annually, by tax levy, at the time other county revenue taxes are levied, not to exceed twenty-five per cent of the total constitutional levy of such county as now provided by law.''

By subsequent sections the fund thus created may be used for building a courthouse, without a vote of the people. The new law then gives the two old methods by the issuance of bonds, or the levy of direct taxes for a given number of years. The first section of the new article is the repealing section. Sections 2, 3, 4, 5, 6, and 7 deal wholly with the building of public buildings out of the ''Building Fund'' mentioned above in said section 2, which we have quoted. The remaining ten sections refer to the other two methods of building courthouses and other public buildings. These ten sections, with slight modifications, are but the re-enactment of old article 5 of chapter 15, Revised Statutes 1909. They begin with section 8 and close with section 17. Section 8 of the new act reads:

''That where it shall become necessary for any county in this State to incur an indebtedness for the purpose of building a courthouse, jail, poorhouse, *county sanitarium or other county buildings where such expenditure cannot be made by creating a county building fund as hereinbefore provided to be paid out of the county annual tax levy and that would create an indebtedness* in excess of the total income and revenue of such county provided for any one year, as limited by law, it shall be lawful for any number not less than one hundred of the qualified voters of such county who are taxpayers therein to present to the county court of such county a petition and application, in writing, setting forth the object and purpose for which the indebtedness is to be created and whether it is desired to issue bonds for such indebtedness, or to pay the same by the direct levy of taxes for that

purpose during a given number of years stated in such petition and praying that an election be held to authorize the incurring of such indebtedness and the levying of such taxes; upon the presentation of such petition, it shall be the duty of the county court of said county at a regular term thereof to order a special election for the purpose set forth in such petition, and to make an entry of such order on the record of the court.''

The italicized words constitute the principal changes made in the re-enactment of section 1 of the old law. Now the respondent urges that neither the petition presented to the county court, nor the order made by the county court, in this case, recites that this courthouse could not have been built out of the public building fund authorized to be created by the new act. It is true that there is no such recital in either document, and if such a recital in one or the other, or in both, is prerequisite to a valid election for the issuance of courthouse bonds, then the proceedings in the instant case are bad, and respondent was right in refusing to register the bonds. But is such a recital necessary or jurisdictional? We think not. The new act does not make it compulsory upon county courts to create this building fund. It says ''the county court *may* create a county building fund,'' etc. When such fund has been created, it then empowers the court, without a vote of the people, to build the courthouse, or other public buildings. In certain contingencies the court may issue bonds, to be paid out of this public building fund. [Sec. 5, Laws 1913, p. 123.]

But to get to the point, the new act contemplates three distinct methods for building and paying for a courthouse. Each is distinct and different from the other. Two of the methods require the vote of the people, but one does not. It is quite clear that prior to the re-enactment of section 1 of article 5, chapter 15, into section 8 of the new article 5 of said chapter,

it was not necessary to make the recital suggested by respondent. Does the modification made so change this method of building and paying for a courthouse by the issuance of bonds voted by the people, as to require this additional recital in the record? We think not. If there was a sufficient public building fund to meet the emergency suggested by the petitioners, the county court might, at the instance of taxpaying citizens, be enjoined from holding a bond election, because in equity such should not be done, where a fund was on hand from which the public building could be erected. But this does not mean that the court should find and recite the fact that there is no such fund before the order for the election is valid. It should be further suggested that this building fund, if established, does not apply to a courthouse alone, but includes other public buildings, the list of which was increased by the new act. There might be a building fund, and the county court might have other uses for it. At most it occurs to me that the failure of the petition for the election to allege, and the failure of the order of the court to recite, that there was no building fund, is not jurisdictional. This for the very good reason that said section 8 of the new act says what shall be stated in the application or petition, and does not say that this fact shall be stated. Under the law the petition or application shall be "in writing, setting forth the object and purpose for which the indebtedness is to be created and whether it is desired to issue bonds for such indebtedness, or to pay the same by the direct levy of taxes for that purpose during a given number of years stated in such petition and praying that an election be held to authorize the incurring of such indebtedness and the levying of such taxes." These are the things the law requires to go in the petition.

As a rule when the statute fixes the terms of a pleading, substantial compliance with the terms of the statute is sufficient. The application or petition in this

case was a compliance with the requirements of this statute, and the order of the court made thereon was valid. This first contention is therefore ruled against the respondent.

II. The sufficiency of the notice of the election is challenged. Section 9 of the Act of 1913, so far as the notice is concerned, reads:

"Such notice shall specify the amount of the debt, the length of time for which bonds shall be issued, the rate of interest, the object and purposes thereof, *the rate of the increase of the tax levy,* and the day on which the election is to be held: Provided, that such election may be held at the same time of holding the general election for State and county officers."

Notice of Bond Election.

We have italicized the statutory provisions which are called to our attention. The notice in this case does not give the increase of the tax levy. Nor do we think it was required in this case. As suggested, the law provides three methods for securing the funds with which to erect public buildings. If bonds are to be voted an election must be held, and of course a notice of election must be given. So too, if the indebtedness is to be paid by a tax levy an election to authorize the proposed debt must be held and a notice of election must be given. The first method, i. e., building the proposed building out of the established building fund, required no election and hence no notice. Section 9 of the new act, supra, therefore applies to two methods of discharging the debt. It provided for the notice in both cases in general terms. Some things so required, are applicable to a bond election and not applicable to an increased levy election, and *vice versa.* Some things are applicable to both. The first requirement of the notice, under section 9, supra, is that the amount of the debt shall be specified. This is applicable to both. The next requisite of the law is "the

length of time for which bonds shall be issued." This clearly has no application to cases when the object of the election is to approve a given amount of debt to be discharged by an increased levy running through a stated number of years. Nor can it be said that the clause "the rate of interest" refers to anything except bonds. The next clause "the object and purpose thereof" evidently applies to both kinds of elections.

But following this clause, we have the *vital* clause in this case. It says the notice shall specify "the rate of the increase of the tax levy." To our minds this clause refers as exclusively to cases where the purpose is to pay the debt by an increased tax levy during a given number of years, as the phrase "the length of time for which bonds shall be issued" applies to bond issues. The whole trouble arises from providing for notice in two cases in one section of the statute.

This is the legislative construction of section 9. In section 10 the law-making power prescribed the form of the ballot. As to bonds nothing is said as to the rate of taxation, but as to the other much is said. This section 10 sheds much light upon the disputed section, and reads:

"Those of the qualified voters who favor the creation of the indebtedness for the purposes specified in the notice may, if the proposition be to issue bonds at such elections, deposit a ticket, written or printed, in the following form: 'Appropriation of $———, for the purpose of ———, yes,' and those who are opposed to the creation of said indebtedness may deposit a ticket, written or printed, in the following form: 'Appropriation of $———, for the purpose of ———, no;' and if the proposition be to pay such indebtedness by the direct levy of taxes for a given number of years without bonds, those of the qualified voters who favor the creation of the indebtedness on such plan may, at such election, deposit a ticket, written or printed, in the following form: 'In favor of indebtedness of $———,

for the purpose of building a courthouse (or jail or poorhouse), and of an increase of the tax levy of —— cents on the one hundred dollars' valuation for —— years, to pay the same, yes;' and those who are opposed to the creation of said indebtedness may deposit a ticket, written or printed, in the following form: 'In favor of an indebtedness of $——, for the purpose of building a courthouse (or jail or poorhouse or county sanitarium or other county buildings) and of an increase of the tax levy of —— cents on the one hundred dollars' valuation for —— years to pay the same, no.' "

The legislative intent is made much clearer by section 12 of the same act. Said section reads:

"If it appears from the returns that a majority of two-thirds of the qualified voters of such county voting at said election voted in favor of incurring said indebtedness, the county court shall make an order reciting the election and the result of the vote for and against the proposed indebtedness, and if the result shall be in favor of issuing bonds therefor, the court, by said order, shall direct the issue of bonds for the amount of said debt, and also the levy of an annual tax for the payment of interest thereon, and also an annual tax in the nature of a sinking fund for the payment of such portion of the principal each year as will extinguish the entire debt within twenty years from the date of contracting the same; and if the result of such election be in favor of paying said indebtedness by the direct levy of a tax therefor during a given number of years, the county court, by said order, shall direct a levy of the rate of tax voted for during the number of years voted for at said election; and (at) the regular time of levying county taxes in each said years, the county court shall, in addition to the other taxes, levy and cause to be extended upon all property subject to taxation in said county said increase (d) rate of tax so voted for said purpose."

Under this section, if the election authorizes bonds, then the county court, in its own way, is authorized to make or direct an annual tax for the interest on the debt, and also an annual tax for a sinking fund, which sinking fund will absorb and take up the bonds at the end of twenty years. If, however, the election authorized an increased tax levy for a stated period then the county court "shall direct a levy of *the rate of tax voted* during the number of years *voted for* at such election."

From it all it appears to be clear that for a bond issue the notice need not specify the rate of increase of taxation required to meet the bonds and interest.

In the case of Benton v. Scott, 168 Mo. 378, the question is settled. That was a case where school bonds had been voted. Taxpayers sought to enjoin the collection of the taxes levied by the school board for interest and sinking fund. The court held that the voters had nothing to do with the amount of the tax levy when the proposition was to issue bonds. Having nothing to do with it, they were entitled to no notice. The reasoning of that case, which passed both Division Two and this court In Banc, settles this controversy. The notice in the instant case is good.

There are several *other* minor suggestions made in the brief of counsel for respondent, but these two questions dispose of the case. We shall not go further. These bonds have been duly authorized and they should be registered. Let our peremptory writ go. All concur.